19 N.J. Super. 350 (1952)
88 A.2d 516
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
AL EDELMAN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued April 14, 1952.
Decided May 7, 1952.
*352 Before Judges EASTWOOD, BIGELOW and FRANCIS.
Mr. Joseph A. Murphy, Deputy Attorney-General, argued the cause for the respondent (Mr. Theodore D. Parsons, Attorney-General, attorney; Mr. Thomas P. Cook, Deputy Attorney-General, of counsel).
Mr. Abram A. Lebson argued the cause for the appellant.
*353 The opinion of the court was delivered by BIGELOW, J.A.D.
The only alleged errors that need be considered grow from the instructions that were given to the jury. The appellant Edelman and two others, Ruggiero and Gross, were indicted for conspiracy and pleaded not guilty. Edelman and Ruggiero were tried together and Gross, who was not put to trial, was the principal witness against them. Ruggiero was acquitted and Edelman was convicted.
The court charged the jury with respect to the testimony of Gross:
"The testimony of one of the defendants has been used in this case in behalf of the State, and you are to accord his testimony just as much value as the testimony of any other witness excepting as I shall later tell you insofar as his former conviction of a crime may have some effect upon his credibility as a witness."
The weight to be given the testimony of Gross was affected by two factors that ordinarily are absent  that he had been convicted of a crime, and that he was an accomplice. The court properly charged that the jurors should take Gross' prior conviction into consideration in determining what weight or credit to attach to his testimony. But the court, in the passage above quoted and throughout the charge, ignored the fact that Gross, according to his own testimony, was an accomplice of Edelman in the conspiracy and, despite that circumstance, charged the jury "to accord his testimony just as much value as the testimony of any other witness."
Where an accomplice is presented by the State as a witness against his co-defendant and testifies fully and truthfully, he thereby obtains an equitable or moral claim for leniency that would not be his due if he had not aided the State in this manner. State v. Graham, 41 N.J.L. 15 (Sup. Ct. 1879); State v. Grundy, 136 N.J.L. 96 (Sup. Ct. 1947). An accomplice is apt to believe that if his testimony supports the contention of the State, the representatives of the State will accept it as true and will grant him favorable treatment, even though his testimony is, in fact, false. For this reason, *354 among others, the jury should regard the testimony of an accomplice with suspicion, and should accept it as true only after careful scrutiny. State v. Hyer, 39 N.J.L. 598 (Sup. Ct. 1877); State v. Black, 97 N.J.L. 361 (Sup. Ct. 1922); State v. Hogan, 13 N.J. Misc. 117, affirmed 115 N.J.L. 531 (E. & A. 1935). What credit should eventually be given the testimony is, of course, a matter to be determined by the jury. State v. Mohr, 2 N.J. Misc. 261 (Sup. Ct. 1924), affirmed 101 N.J.L. 230 (E. & A. 1925). They may put little or no faith in it, or they may be convinced of its truth, but certainly they are not required as a matter of law to accord it "just as much value" as the testimony of any other witness. The instruction was erroneous.
The defendant made no request to charge on the subject of the testimony of Gross, and he made no objection to the instruction that was given or to the court's failure to warn the jurors against too ready an acceptance of his testimony. But the omission of the usual words of caution and the erroneous instruction given to the jury were especially harmful because the State had no case without Gross' testimony. We are satisfied that the appellant suffered manifest injury and that there should be a reversal on this score.
The appellant did not testify. On this subject, the court charged:
"When an accused person is on trial and the evidence tends to establish facts which, if true, would be conclusive of his guilt of the charge against him, and he can disprove them by his own oath as a witness, if the facts be not true, then his silence would justify a strong inference that he could not deny the charges. There is a rule in this State that the failure of a defendant to testify may be commented upon as tending to establish facts which would justify a strong inference that the defendant could not deny the charges."
Appellant objected to this passage. After the jury had considered the case for two hours, they returned to ask the court, "Could the State have put Edelman on the stand inasmuch as his attorney did not?" While the learned trial judge did not answer the question, he discussed anew the *355 failure of appellant to testify and repeated almost verbatim the two sentences we have quoted above. The jury then retired for the second time and in two or three minutes brought in their verdict that Edelman was guilty.
The first sentence quoted is taken from Parker v. State, 61 N.J.L. 308 (Sup. Ct. 1898), affirmed 62 N.J.L. 801 (E. & A. 1899). The meaning of the second sentence is not entirely clear. The jury would naturally and properly believe that the whole passage was applicable to the case then being tried and to the evidence which had been presented. The test of the soundness of instructions is "how and in what sense under the evidence before them and the circumstances of the trial, would ordinary men and jurors understand the instructions as a whole." State v. Pitman, 98 N.J.L. 626 (Sup. Ct. 1923), affirmed 99 N.J.L. 527 (E. & A. 1924). In the present case, the jurors probably understood the learned judge to mean that Edelman's failure to testify justified a strong inference that he could not deny the charge of conspiracy.
Where the State presents direct evidence of a material fact which is prejudicial to the defendant and which is within his personal knowledge, then his failure to deny the fact justifies an inference unfavorable to the defendant. If the fact is conclusive of his guilt, his silence justifies a strong inference that he cannot deny the charge contained in the indictment. For instance, let us suppose that a witness testifies that he saw defendant fire the fatal shot. We say roughly that the fact is conclusive of guilt of murder, even though the State must also prove that the bullet was the cause of death, and if defendant does not testify, the jury may draw a strong inference that he cannot deny his guilt. But if the State depends on circumstantial evidence, the inference is weaker and narrower. We will assume that the witness testifies merely that he sold defendant a pistol identified by a certain number, and other witnesses prove that deceased was killed by a bullet from that pistol. The inference that may be drawn from defendant's failure to testify is limited *356 to the particular fact within his personal knowledge, namely, the purchase of the pistol. It does not extend to the ultimate issue, whether he is guilty of murder. And the inference is not as strong because the defendant may be relying for acquittal on the weakness of other links in the chain of proof or on a hope that the jury will conclude that the circumstances do not overcome the presumption of innocence.
Such is our view of the law although, as pointed out by Chief Justice Case in State v. Anderson, 137 N.J.L. 6 (Sup. Ct. 1948), "Our appellate courts have not always been entirely clear in their expressions on the subject." Some other important decisions are State v. Callahan, 77 N.J.L. 685 (E. & A. 1909); State v. Kisik, 99 N.J.L. 385 (E. & A. 1924); State v. Sgro, 108 N.J.L. 528 (E. & A. 1932), and State v. Friedman, 136 N.J.L. 527 (E. & A. 1948).
In the case now under review, as in most conspiracy prosecutions, the evidence of defendants' guilt was entirely circumstantial. While the State's witnesses testified to a number of specific facts which were within the knowledge of Edelman, his silence was an insufficient basis for an inference that he could not truthfully deny that he was guilty of the conspiracy. The charge was erroneous.
We will consider only one other matter. When the jury inquired, "Could the State have put Edelman on the stand inasmuch as his attorney did not?" and the court replied without answering the question, counsel for Edelman objected on the ground that the court should have informed the jury that the State could have put Edelman on the stand. "While it is true that the State cannot compel Edelman to testify against his own interest, the State could have called Edelman as a witness for the State as against Ruggerio; they could have called Edelman on the stand and asked him questions which he could have refused, to protect his constitutional rights." Such is appellant's contention.
Two principles or rules prevent the State from presenting a defendant as a witness upon his own trial. One *357 is the principle that finds expression in the Fifth Amendment to the Constitution of our country: "No person * * * shall be compelled in any criminal case to be a witness against himself." While our State Constitution contains no similar express guarantee, we of course recognize and enforce this great principle in New Jersey. State v. Zdanowicz, 69 N.J.L. 619 (E. & A. 1903); State v. Miller, 71 N.J.L. 527 (E. & A. 1905). The other rule, derived from the common law, made incompetent as a witness any person interested in the result of the action. A party could not testify in his own behalf or be compelled to testify for his adversary. Little v. Arrowsmith, 16 N.J.L. 221 (Sup. Ct. 1837); Campbell v. Zabriskie, 8 N.J. Eq. 356, at 471 (Ch. 1850), affirmed Id. 738 (E. & A. 1851). It may be noted, however, that a defendant named in an indictment, while he was disqualified from testifying at his own trial, was a competent witness either for the State or for a co-defendant upon the separate trial of the latter. State v. Brien, 32 N.J.L. 414 (Sup. Ct. 1868). The disqualification of parties was abrogated in civil causes by L. 1849, p. 265 and L. 1859, p. 489, but not until 1871 was the rule, as applied to criminal trials, changed. L. 1871, p. 12, now appearing in substance in R.S. 2:97-10 and N.J.S. 2A:81-8, provides that on the trial of an indictment, the defendant shall be admitted to testify but only "if he offers himself as a witness."
A defendant who is on trial cannot be compelled to testify for the State or for a co-defendant or even in his own behalf. Wigmore, Evidence, § 2268(2); Wharton, Criminal Evidence, § 1125; 58 Am. Jur., Witnesses, § 173; People v. Ferola, 215 N.Y. 285, 109 N.E. 500 (Ct. App. 1915); Sprague v. State, 203 Md. 581, 181 N.E. 507 (Ind. Sup. Ct. 1932). It would clearly be improper for the State to call the defendant as a witness, in order to emphasize his refusal to testify. Brown v. U.S., 56 F.2d 997 (C.C.A. 9 1932); Philadelphia v. Cline, 158 Pa. Super. 179, 44 A.2d 610 (Pa. Super. Ct. 1945); certiorari denied, Barnes v. City *358 of Philadelphia, 328 U.S. 848, 66 S.Ct. 1120, 90 L.Ed. 162 (1946).
The conviction of appellant will be reversed for the reasons set forth earlier in this opinion.